UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

    Plaintiff,

v.

APPROXIMATELY $2,500 SEIZED
FROM JP MORGAN CHASE BANK
ACCOUNT #749634648,

APPROXIMATELY $1,050,402.54
SEIZED FROM JP MORGAN CHASE
BANK ACCOUNT #888563483,

    Defendants.

Case No. 6:21-cv 969-RBD-GJK

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

In accordance with Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Plaintiff the United States brings this complaint and alleges upon information and belief as follows:

### NATURE OF THE ACTION

1. This is a civil action *in rem* to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and Rule G(2), the following:

    a. approximately $2,500 seized from JP Morgan Chase Bank Account #749634648; and

    b. approximately $1,050,402.54 seized from JP Morgan Chase Bank Account #888563483.

(Defendant Funds) on the grounds that the funds are proceeds obtained from wire fraud offenses, in violation of 18 U.S.C. § 1343. Thus, the Defendant Funds are subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over an action commenced by the United States by virtue of 28 U.S.C. § 1345, and over an action for forfeiture by virtue of 28 U.S.C. § 1355.

3. This Court has *in rem* jurisdiction over the Defendant Funds pursuant to 28 U.S.C. § 1355(b)(1)(A), because venue properly lies in the Middle District of Florida pursuant to 28 U.S.C. § 1395.

4. Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. § 1355(b)(1), because pertinent acts or omissions giving rise to the forfeiture occurred in this District.

5. Because the Defendant Funds are in the government's possession, custody, and control, the United States requests that the Clerk of Court issue an arrest warrant *in rem*, upon the filing of the complaint, pursuant to Supplemental Rule G(3)(b)(1). The United States will then execute the warrant on the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

## THE DEFENDANTS *IN REM*

6. The Defendant Funds consist of 1) approximately $2,500 seized from JP Morgan Chase Bank Account #749634648; and 2) approximately $1,050,402.54 seized from JP Morgan Chase Bank Account #888563483. The funds were seized by the United States Secret Service on or about April 27, 2021 pursuant to a Federal seizure warrant after a finding of probable cause that the funds constituted proceeds of wire fraud offenses. The funds are currently held in the Treasury Suspense account.

7. As set as set forth in Supplemental Rule G(3)(b)(i), the Clerk of Court must issue a warrant to arrest the Defendant Funds if they are in the government's possession, custody, or control.

## BASIS FOR FORFEITURE

8. Pursuant to 18 U.S.C. § 1343, it is unlawful to "devise[] . . . any scheme or artifice to defraud," or to "obtain[] money or property . . . by means of false or fraudulent pretenses, representations, or promises," if the person "transmits or causes to be transmitted by means of wire . . . communication in interstate or foreign commerce any writings . . . or sounds . . . for the purpose of executing such scheme or artifice." *Id.*

9. The Defendant Funds are proceeds of a wire fraud scheme, obtained in violation of 18 U.S.C. § 1343, as set forth further below. The

3

Court's authority to order civil forfeiture of property for violations of 18 U.S.C. § 1343 is found in 18 U.S.C. § 981(a)(1)(C). Section 981(a)(1)(C) provides for the civil forfeiture of any property that constitutes or is derived from proceeds traceable to a "specified unlawful activity," as defined in 18 U.S.C.§ 1956(c)(7). "Specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7), includes offenses listed in 18 U.S.C. § 1961(1), which includes wire fraud in violation of 18 U.S.C. § 1343.

10. Recognizing that money is fungible, 18 U.S.C. § 984 provides that, in a civil forfeiture action against funds in an account in a financial institution, the United States need not identify the specific funds involved in the criminal offense. Rather, "any identical property found in the same…account…shall be subject to forfeiture," so long as the action against the funds is commenced within "1 year from the date of the offense." In other words, the United States may forfeit any funds in an account, even if the funds currently in the account were not involved in the relevant criminal activity, so long as the funds forfeited do not exceed the total amount of dirty funds deposited into the account within the past year.

11. As required by Rule G(2)(f), the facts set forth herein support a reasonable belief that the government will be able to meet its burden of proof at trial. Specifically, they support a reasonable belief that the government will

be able to show by a preponderance of the evidence that the Defendant Funds are proceeds of wire fraud offenses.

## FACTS

12. At all times relevant, Matthew Britsch was employed as a Special Agent with the USSS.

### I. The Fraud Perpetrated Against D.S. and T.S.

13. In March 2021, D.S. and T.S. (brother and sister) attempted to purchase a piece of real property in Winer Park, Florida. As part of this process, they received wire transfer instructions via email from whom they believed to be the closing agent in order to close on the property.

14. As a result of those instructions, D.S. went to a Wells Fargo Bank and requested that $512,902.54 be wire transferred from her account to JP Morgan Chase Bank Account #749634648 ("Subject Account #1").

15. As a result of instructions T.S. received from an individual he believed worked for the closing agent, using his home computer, T.S. wire transferred $540,000 from his account at Bank of America to Subject Account #1.

16. The total amount wire transferred to Subject Account #1 from the victims to purchase the property in Winter Park was $1,052,902.54.

Unfortunately, because of a Business Email Compromise ("BEC") scheme[1] perpetrated against the victims, their funds did not end up in the correct account.

### A. Investigation by the USSS

17. Agents with the USSS reviewed all documents, emails and reports involved in the real estate transaction. Agents were able to identify altered, commonly referred to as "spoofed," email addresses present throughout numerous email communications between the parties involved in the real estate transaction. Specific spoofed email addresses were discovered for the two victims, as well as the closing agent.

18. The fraud appears to have started in mid-March 2021 with an email from an individual using the spoofed email for the closing agent to the real estate attorney representing the victims in the purchase of the property. As part of this email exchange, the real estate attorney's office unwittingly emailed the perpetrators the email addresses for the two victims.

---

[1] BECs are fraud schemes carried out by compromising legitimate email accounts through social engineering or computer intrusion techniques to conduct unauthorized transfers of funds. A typical business email compromise scam targets commercial, financial, or real estate entities which regularly engage in wire transactions. The victim, which can be an employee or member of the general public, is targeted via email by a compromise actor posing as a representative of the entity, inducing the victim to unwittingly wire funds to a fraudulent account to which the victim believes to be legitimate.

19. Thereafter, numerous emails were exchanged between the closing agent and one or more individuals whom the closing agent believed to be T.S. and D.S. Indeed, on March 24, 2021, the genuine closing agent emailed the wire instructions to whom she believed to be T.S. and D.S. However, the closing agent emailed the wire instructions to close on the property to the spoofed emails of T.S. and D.S.

20. In the meantime, on March 25, 2021, T.S. and D.S. received emails from the spoofed email of the closing agent, directing the funds to close on the property to be wired to Subject Account #1.

21. The funds to close on the property were supposed to be wired by the victims to an Orlando-based law firm's trust account at South State Bank in Winter Haven, FL. Instead, the $1,052,902.54 from the victims was wired to Subject Account #1.

   1. *Fraud Perpetrated Against N.G.*

22. On April 8, 2021, USSS agents interviewed N.G. N.G. owns a law firm located in Gainesville, FL that specializes in U.S. and International corporate law. The firm works with companies across the globe. N.G. stated that she routinely works on intellectual property cases that involve the resolution of disputes.

23. In late February 2021, N.G.'s firm was contacted by an individual named "Martin Roberto" via the law firm's website's chatbox. Roberto claimed to be the CEO of an IT & Software Development company based in Puerto Vallarta, Mexico, and was involved in a contract dispute with a third party. N.G.'s firm would be retained to enforce a settlement reached by the parties by sending a demand letter and preparing for any necessary litigation if the settlement funds were not received.

24. As a result of this communication, on March 5, 2021, a signed engagement letter was received by N.G.'s law firm from Roberto. Roberto paid N.G.'s law firm a $1,500 retainer. A subsequent fee of $2,500 was to be deducted from the settlement funds when they were received.

25. N.G. indicated that she maintained contact with Roberto over a six-week period about his case, he did not appear to be in any rush, and he provided specific details about his dispute, and that the settlement reached between the parties appeared appropriate.

26. Roberto instructed N.G. that when she received his settlement funds, the funds should then be transferred to Santander Bank in Puerto Vallarta, Mexico.

### 2. Transfer of Fraud Proceeds obtained from D.S. and T.S. into Subject Account 1

27. JP Morgan Chase Bank Account #749634648 is the trust account for N.G.'s law firm. N.G. is the sole signatory on the account. N.G. told agents that she utilizes this account in conjunction with JP Morgan Chase Bank Account #888563483 ("Subject Account #2") to send and receive wire transfers.

28. On March 30, 2021, $540,000 from T.S.'s Bank of America account was wire transferred into Subject Account #1. On March 31, 2021, $512,902.54 from D.S.'s Wells Fargo Bank account was wire transferred into Subject Account #1. N.G. believed that these funds were deposited by the other party involved in the contract dispute with Roberto, and not from victims of a BEC scam.

29. As a result of the instructions she received from Roberto, on March 31, 2021, the victim's funds were wired transferred from this account to Santander Bank in Mexico, less the $2,500 fee that N.G. was to be paid once the settlement funds were received.

30. On or about April 27, 2021, approximately $2,500 was seized from Subject Account #1.

### 3. *Transfer of Fraud Proceeds obtained from D.S. and T.S. into Subject Account #2*

31. Subject Account #2 is N.G.'s law firm's operating account. N.G. is the sole signatory on the account.

32. On or about April 27, 2021, approximately $1,050,635.58 was seized from Subject Account #2. These funds were the funds obtained by D.S. and T.S. Specifically, when the USSS learned of the fraud perpetrated on the victims, they were able to work with JPMC to recall the money from Santander Bank in Mexico. Once recalled, those funds were deposited into Subject Account #2.

33. N.G. indicated that she was under the impression that the funds she would be receiving as a result of Roberto's contract dispute, up to $1.9 million, would be from the other party involved in the contract dispute, and not from funds related to a real estate transaction in Winter Park, Florida. N.G. told agents that she wished all of the funds stolen from the victims would be withdrawn from her accounts and returned to them as soon as possible.

### 4. *Interview with Roberto*

34. N.G. provided agents with the contact information she had for Roberto. In April 2021, agents attempted to call all the phone numbers N.G. had for Roberto with no success on all numbers, except one.

35. Agents were able to speak with a male who claimed to be Martin Robert, not Martin Roberto. When agents asked Mr. Robert to clarify his last name and his date of birth, the male provided a date of birth inconsistent to the identification document Roberto provided to N.G. When agents asked Mr. Robert why his date of birth was different than that on the Mexican Consulate Identification document he provided N.G., the caller hung up.

## CONCLUSION

36. As required by Supplemental Rule G(2)(f), the facts set forth herein support a reasonable belief that the government will be able to meet its burden of proof at trial. Specifically, probable cause exists to believe that the Defendant Funds are proceeds of wire fraud offenses in violation of 18 U.S.C.

§ 1343, and are, therefore, subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

Dated: June 4, 2021

Respectfully Submitted,

KARIN HOPPMANN
Acting United States Attorney

By: *[signature]*
NICOLE M. ANDREJKO
Assistant United States Attorney
Florida Bar No. 0820601
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
(407) 648-7500 – telephone
(407) 648-7643 – facsimile
E-mail: nicole.andrejko@usdoj.gov

## VERIFICATION

I, Matthew Britsch, hereby verify and declare under penalty of perjury, that I am a Special Agent with the United States Secret Service, and pursuant to 28 U.S.C. § 1746: (1) I have read the foregoing Verified Complaint for Forfeiture *in Rem* and know the contents thereof; and (2) that the matters contained in the Verified Complaint are true to my own knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States Secret Service, as well as my investigation of this case together with other law enforcement agents. I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Executed this __2__ day of June, 2021.

_____
MATTHEW BRITSCH
Special Agent
United States Secret Service